BATES, District Judge,
with whom District Judge KOLLAR-KOTELLY joins, concurring:
I concur fully in the Court’s excellent opinion. I write only to add two brief observations.
First, to state the obvious, Act R54 as now pre-cleared is not the R54 enacted in May 2011. It is understandable that the Attorney General of the United States, and then the intervenor-defendants in this case, would raise serious concerns about South Carolina’s voter photo ID law as it then stood. But now, to the credit of South Carolina state officials, Act R54 as authoritatively interpreted does warrant pre-clearance. An evolutionary process has produced a law that accomplishes South Carolina’s important objectives while protecting every individual’s right to vote and a law that addresses the significant concerns raised about Act R54’s potential impact on a group that all agree is disproportionately African-American. As the Court’s opinion convincingly describes, South Carolina’s voter photo ID law, as interpreted, now compares very favorably with the laws of Indiana, Georgia and New Hampshire, each of which has passed legal muster through either federal court constitutional review or pre-clearance by the Attorney General. The path to a sound South Carolina voter photo ID law has been different, given the essential role of the State’s interpretation of key provisions.
Which brings me to my second observation — one cannot doubt the vital function that Section 5 of the Voting Rights Act has played here. Without the review process *54 under the Voting Rights Act, South Carolina’s voter photo ID law certainly would have been more restrictive. Several legislators have commented that they were seeking to structure a law that could be pre-cleared. See Trial Tr. 104:18-21 (Aug. 28, 2012) (Harrell) (“I was very aware at the time that we were doing this that whatever we would have to do would have to be subject to the Voting Rights Act because that would be the basis for the Department of Justice preclearing the bill for us.”); id. at 105:15-18 (“[I] ask[ed] the staff who drafted the bill for me to please make sure that we are passing a bill that will withstand constitutional muster and get through DOJ or through this court.”); Trial Tr. 108:23-25 (Aug. 27, 2012) (Camp-sen) (agreeing that he was “interested in what voter ID legislation had been precleared” in drafting R54); id. at 148:10-15 (discussing senators’ statement that “[t]he responsible thing to do was to fix [the bill] so that it would not fail in the courts or get tripped up by the Voting Rights Act”); Trial Tr. 141:9-12 (Aug. 28, 2012) (McConnell) (discussing his efforts on behalf of a bill that “had a better chance of getting preclearance”); id. at 182:18-20 (on the Senate floor “[t]here was discussion about” how “to craft a bill that would comply with the voting rights amendment”). The key ameliorative provisions were added during that legislative process and were shaped by the need for pre-clearance. And the evolving interpretations of these key provisions of Act R54, particularly the reasonable impediment provision, subsequently presented to this Court were driven by South Carolina officials’ efforts to satisfy the requirements of the Voting Rights Act.
Congress has recognized the importance of such a deterrent effect. See H.R.Rep. No. 109 — 478, at 24 (2006), 2006 U.S.C.C.A.N. 618, 633 (finding that “Section 5 encourage[s] the legislature to ensure that any voting changes would not have a discriminatory effect on minority voters,” and “that the existence of Section 5 deterred covered jurisdictions from even attempting to enact discriminatory voting changes” (internal quotation marks omitted)); S.Rep. No. 109-295, at 11 (2006) (finding “some reason to believe that without the Voting Rights Act’s deterrent effect on potential misconduct” racial disparities in voting “might be considerably worse”). The Section 5 process here did not force South Carolina to jump through unnecessary hoops. Rather, the history of Act R54 demonstrates the continuing utility of Section 5 of the Voting Rights Act in deterring problematic, and hence encouraging non-discriminatory, changes in state and local voting laws.